1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON STILL,

                        Plaintiff,

        v.

CITY OF LONGVIEW,

                        Defendant.

CASE NO. C23-5750 BHS

ORDER

This matter is before the Court on Defendant City of Longview's motion for summary judgment. Dkt. 12. Because Plaintiff Jason Still fails to establish a genuine issue of material fact on any of his claims, the motion is granted.

**I.   BACKGROUND**

This matter concerns three separate Longview city council meetings during which Mayor MaryAlice Wallis either ordered Still to be removed for interrupting the meetings or asked him to stop speaking. At these meetings, the council provided the public an opportunity to address the council directly during a "constituents' comments" period. The constituents' comments period is limited by city resolution "to no more than one-half (1/2) hour, and . . . limit[s] the presentation time permitted to no more than three (3)

1   minutes per constituent or five (5) minutes per speaker representing a group of

2   constituents consisting of 3 or more." Dkt. 16-1 at 2. At each of the meetings at issue,

3   Still spoke uninterrupted during the constituents' comments period. Yet after each period

4   ended and the council moved onto other agenda items, Still verbally interrupted the

5   meetings.

6       First, during a city council meeting on April 14, 2022, Still spoke extensively

7   during the constituents' comments period:

8       MR. STILL: This council of well-intentioned people has
        demonstrated to be making decisions based on an urge to conform or upon
9       a belief that -- that dissent is impossible due to members valuing harmony
        and coherence above critical thought. This is known as group think.

10          Being a witness to the rare nonunanimous votes of this council is
        one thing. However, the events preceding the appointment of Mr. Ortiz
11      validates the complicit unity being imposed upon this council and remains a
        malignant, discretionary effort where governance is maintained -- where the
12      governance, as maintained, is simply unAmerican but, more importantly, is
        unconstitutional. The 1964 supreme court ruling in the case New York
13      Times vs. Sullivan held that, quote, public discussion is a political duty.
        And that -- this should be a fundamental principle of American
14      government. Order cannot be secured merely through fear of punishment
        for its infraction. The fear of punishment is inferred as repression. That
15      breeds hate. That hate menaces stable government. The path of safety lies
        in the opportunity to discuss freely supposed grievances and proposed
16      remedies, a profound national commitment to the principle that debate on
        public issues should be uninhibited, robust, and wide open, and that may
17      well include vehement, caustic, and sometimes unpleasantly sharp attacks
        on government and public officials, close quote.

18          There is little so obviously fake as the public discourse of dissenting
        ideas, the retreat to private meeting, followed by the unanimous consent of
19      that same group upon the return to public forum. Liberal -- the literal
        definition of a council is to be a deliberative body. This body is chosen by
20      the people for the people and is constitutionally mandated to be conducted
        in front of the people.

21          Controversial, difficult, or otherwise grievous matters that may
        incent . . . councilmembers to express contrary ideas or other discord and
22      perspective does not entitle this council to taking action behind closed

ORDER - 2

1

2

3

doors. Should the debate, for -- for practicality's sake require the matter be held over to another meeting, then so be it. Do not avoid debate or having debate. Bad words, lack of decorum, and other vehement expression is protected under the first amendment and is -- and if not allowed or considered by the government is considered repression.

4

Dkt. 13-1 at 14.

5

Still finished speaking, and several others from the public addressed the council.

6

Dkt. 13-1 at 14–16. Before closing the constituents' comments period, Mayor Wallis

7

asked whether anyone else wanted to speak. Nobody did:

8

9

10

MAYOR WALLIS: Thank you. Is there anyone online that would like to comment tonight? Please raise your hand. Is there anyone else in the public that would like to speak tonight? Okay. We will close our constituent comments portion of our meetings.

Dkt. 13-1 at 26–27.

11

12

As Mayor Wallis introduced another agenda item, Still interrupted her. However,

the transcript of the meeting does not reflect what, exactly, Still said:

13

14

15

16

17

18

19

MAYOR WALLIS: . . . .
Move to Item Number 10 on the agenda, which is boards and commissions recommendation. Manager Sacha, do we have any follow-up constituent comment?
MR. SASHA: None this evening, Your Honor.
MAYOR WALLIS: Thank you. We have Item Number 10, boards and commissions recommendation. We have the youth --
We are in our business meeting right now, and we have closed our constituent comments. We are not taking any more public comment at this time. And if you cannot refrain -- we don't have any comments during that time. Mr. -- go ahead.

Dkt. 13-1 at 27.[1]

20

21

22

_____

[1] What Still said is also not clear from the video recording of the meeting. *See* Dkt. 13, Exhibit A (Video Footage of April 14, 2022, Longview City Council Meeting). However, the voice of a person can be heard interrupting the meeting. *See id.*

1    Mayor Wallis testified that, during this portion of the meeting, "Mr. Still

2    interrupted [her] precluding [her] from moving forward with the business meeting." Dkt.

3    16 at 4. According to Mayor Wallis, "Mr. Still persisted in arguing with [her] as [she]

4    was attempting to move forward with City business" and, "[a]t that point, [she] asked

5    Chief of Police [Robert] Huhta to remove Mr. Still from the meeting due to the

6    disruption." Dkt. 16 at 4. Chief Huhta then "approached Mr. Still to ensure he left the

7    meeting." *Id.*

8    Still asserts that he "attempted to raise questions pertaining to Agenda Item No. 8,

9    which at the time was identified as 'FOLLOW UP TO PAST CONSTITUENT

10   COMMENTS.'" Dkt. 19 at 5. Still contends that Mayor Wallis "[r]ejected [his] attempts

11   to clarify the execution of the agenda," "[w]ould not allow [him] to raise [his] questions

12   regarding a previous constituent comment [he] had made," and "[s]ought to prohibit

13   [him] to express issues directly relevant to the matters that ought to have been considered

14   at the specific point in the meeting [he] attempted to be heard." *Id.* Still testified that

15   Chief Huhta approached him and stated that "the mayor had asked [Still] to leave the

16   meeting" and, after Still "disagree[d] with Chief Huhta," Chief Huhta ordered him to

17   leave the meeting, "threatening [Still] with . . . arrest." *Id.* at 7. Still then "chose to leave

18   the City Council Chambers . . . of [his] own volition." *Id.*

19   Next, during a city council meeting on May 12, 2022, Still again spoke at length

20   and uninterrupted during the constituents' comments period:

21   MR. STILL: This council, over the past two consecutive meetings
     has prevented their own published instructions from being employed by the
22   public. More importantly, by denying the public comment, this council is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

criminally culpable. RCW Title 9A is the Washington State Criminal Code, and Chapter 80 lists abuse of office and specifies official misconduct as: A public servant is guilty of official misconduct if, with intent to obtain benefit or to deprive another person of lawful right or privilege. During both April council meetings, my lawful rights to attend a city council meeting and my constitutional right to petition the government was deprived. Thus, according to the criminal code, a gross misdemeanor was committed during each of the before-mentioned meetings; therefore -- or, however, criminal culpability of this council does not end there. Failure to -- failure of duty by a public officer, under Title 42 in Chapter 20 of the RCW is classified as a misdemeanor, and states: Whenever any duty is enjoined by law upon any public officer or other person holding any public trust or employment, their wilful negligent [sic] to perform such duty, except where otherwise specified -- specifically provided for by law shall be a misdemeanor.

Longview municipal code enjoins by law the duties of your public offices by establishing all meetings of the Council and the committees of shall be open to the public. And the rule of the Council shall be to provide citizens of the city op- -- shall have a reasonable opportunity to be heard at any meeting in regard to any matter being considered thereat.

How many more gross misdemeanors and misdemeanors is this council willing to be culpable for? Is there not going to be any action taken by this council to account for their criminal be- -- criminal actions? Must there be legal actions pursued before the Council actually moves to enact measures to resolve these matters?

Again, I say: A problem pervasive enough to have culminated in criminal behaviors qualifies the necessity for change. Either remedy can be pursued through the enforcement of our laws or this council can adapt to provide a remedy that prevents crimes and first amendment rights from being infringed. Because punishment is not prevention, I hope prevention will be pursued. So, again, I ask: How is a solution going to be pursued? To what extent is the Council prepared to adapt to procedures that maintain the law and constitutional freedom? How will you engage with the public to an act such changes?

Dkt. 13-2 at 8–10.

Still stopped speaking, and several others from the public addressed the council.

Dkt. 13-2 at 10–20. Mayor Wallis then asked whether anyone else desired to address the

1   council, and nobody did. After Mayor Wallis closed the constituents' comments period

2   and moved onto another agenda item, Still interrupted the meeting:

3               MAYOR WALLIS: Thank you . . . .
            Anyone else?
4            Okay. We will close our constituent comments at this time.
            Manager, are there any follow-ups to past constituent comments?
5            MR. SACHA: I have none this evening. Thank you, Your Honor
    . . . .
6            MAYOR WALLIS: And we have --
            MR. STILL: I have something to say on that agenda. I --
7            MAYOR WALLIS: I'm sorry. You're going to need to sit down or I
    will have to ask you to be removed.
8            MR. STILL: So I'm being denied my lawful right?
            MAYOR WALLIS: I would like you to sit down.
9            MR. STILL: (Inaudible).
            MAYOR WALLIS: Please sit down. Please sit down, Jason.
10           MR. MCNAMARA: Madam Mayor, maybe the member of the
    public doesn't understand that follow-up to past constituent's comments is
11   not a second constituent comment section. It's the opportunity for the city
    manager to respond to past constituent comments. We don't reopen up the
12   public comments at that point. And, as the mayor and manager indicated,
    there is no comments from the city manager, so we're moving on to other
13   Council business. And I think the mayor has the right to maintain the order
    of the meeting, and so she's informed you that that portion of constituent
14   comments is now past.
            Obviously, you're welcome to comment on other business as it
15   comes before the Council, but it's not a second opening for constituents'
    comments.
16           MR. STILL: That's exactly what I'm attempting to do as specified in
    the law that I just quoted to be able to speak on any matter at any meeting
17   being considered at. Item 8 is follow-up to constituent comments. It's an
    item on the agenda. Even the instructions on the city council's website
18   specifically says that you can comment on any agenda item and that it is a
    part of from constituent comments. So am I going to be denied that right or
19   are you going to again expose criminal culpability to this council?
            MAYOR WALLIS: Mr. Still, you have been given instruction by
20   our attorney. You've asked -- I've been -- I've asked you to sit down.
    We've gone over this the last three council meetings that follow-up to
21   constituent comments has a different meaning than what you think it does.
    It is the time that the manager has to discuss things that he has prepared to
22   discuss with constituents at this time, and he does not have anything. I've

asked him. So you can sit down. You can take a card and have a discussion with the manager -- he's available during the week -- and have your items discussed at that time. If you --

MR. STILL: I'll take that as you denying my right.

Dkt. 13-2 at 20–22.

Mayor Wallis then moved onto other agenda items, and Still spoke multiple times on specific agenda items when the council permitted public comment. *See* Dkt. 13-2 at 46–47, 84, 99–100–102.

Finally, during a city council meeting on June 22, 2023, Still again spoke extensively and uninterrupted during the constituents' comments period:

MR. STILL: I would just like to reiterate a couple of things that have already been said because one of them was similar to a gentleman who came up here a while ago, talking about the problems he had with the public utility and just the exorbitant amount of cost that was going on that he had to deal with there. And he came and he spoke here for much the same reason that the gentleman here earlier tonight did. And it's the fact that when he goes to the people or goes through proper channels, he ends up having to come here. And yet five times, and presumably a 6th -- this council has moved towards increasing taxes.

My question is, when the tax measure fails, what program or staff are you going to cut if this is so necessary? Because clearly there are people who aren't doing their jobs. Because to answer a question about rats or about rats because a lid is off and to go off about rat poison, yeah, okay, that's great, you got rat poison. I'm talking about lids to the garbage can. Those are not two of the same thing; one may cause the other, but you're avoiding the question. That's not exactly the best way to deal with things.

And it kind of demonstrates some of the things that are going on within our government, not necessarily these particular people, but some of the people that work with them and the things that have been allowed to happen. Because the only thing that gets considered at budget time is how we can spend more. And like what was said earlier, we don't have -- we don't have it, especially since our taxes are going up all the time. And in some instances are cost to be the highest in the nation. It's -- there's a lot of things that need to be better.

And as far as constituent comments is concerned, I don't know why the lawyer was giving you any problem with that because supreme court

precedent, multiple times, allows people to talk about whatever they want
and that it's their right to do so under the First Amendment.

Dkt. 13-3 at 18–20.

When the council moved onto other agenda items, Still spoke several times on

specific agenda items when the council permitted public comment. *See* Dkt. 13-3 at 25,

32, 58–60. However, later during the meeting, Still interrupted a discussion between

councilmember Hillary Strobel and Longview Parks and Recreation Director Jen Wills:

> MS. STROBEL: Madam Mayor, can I make a point of order? Can
> you clarify, Jen, at what point in your presentation did you say that we
> would use any part of this potential levy to acquire new property?
> UNIDENTIFIED MALE: It's a good thing (inaudible) –
> MS. WILLS: So I'm not looking at new property and I'm not
> looking at -- MAYOR WALLIS: Excuse me, you are out of order,
> sir.
> MR. STILL: Who's out of order, me?
> MS. STROBEL: You –
> MAYOR WALLIS: You are out of order. Yes, Mr. Jason Still, you
> are out of order.
> MS. STROBEL: I was asking a question to staff; do you mind? Can
> I do my business?
> MR. STILL: How am I out of order (inaudible)?
> MR. WALLIN: This is a disruption of our public meeting, Madam
> Mayor.
> Madam Mayor.
> MAYOR WALLIS: Yes, it is a disruption.
> MR. WALLIN: Do we need to discontinue the meeting or take a
> recess or maybe ask Mr. Still to leave while he's disrupting a public
> meeting?
> MR. STILL: Muttering something under my breath.
> MS. STROBEL: I heard you, so it wasn't under your breath.
> MR. STILL: Right. It still doesn't change that I have First
> Amendment rights.
> MS. STROBEL: I would like to continue to ask my question to Ms.
> Wills.
> MAYOR WALLIS: This is a complete disruption –
> COUNCIL MEMBERS: Can you please clarify –
> MAYOR WALLIS: Can you ask Mr. Still to leave the room, please?

Dkt. 13-3 at 67–68

Mayor Wallis testified that she "indicated to the police chief that Mr. Still needed to leave the meeting." Dkt. 16 at 7. Longview Police Captain Branden McNew testified that he "walked toward Mr. Still," who "was cooperative at first." Dkt. 15, ¶ 5; *see also* Dkt. 15, Exhibit A (McNew June 22, 2023 Body Camera Footage). Still "got up from his seat and walked toward the back of the Longview Council Chambers," but "[h]e then stood in the hallway where he could still be seen and heard by those inside the City Hall Council Chamber." Dkt. 15, ¶ 5; *see also* Dkt. 15, Exhibit A. In this hallway, "[t]he entirety of the back wall is glass" and Captain McNew testified that he could "clearly hear the words of each speaker in the City Council meeting." Dkt. 15, ¶ 5. Body camera footage of this event shows Still standing directly outside of the meeting room, separated by only a clear class wall and two doors, both of which were open. *See* Dkt. 15, Exhibit A. Still stood in direct view of the city council, facing its members. *See id.*

Captain McNew asked Still several times to leave the building, but Still refused, saying that Mayor Wallis asked him to leave the "meeting," not the "building." Dkt. 15, ¶ 6; *see* Dkt. 15, Exhibit A. McNew then ordered Still to leave the building, and Still again refused. Dkt. 15, ¶ 6; *see* Dkt. 15, Exhibit A. McNew believed that, at this point, he had probable cause to arrest Still for both disorderly conduct and obstructing a law enforcement officer. Dkt. 15, ¶ 6. McNew accordingly explained to Still "a number of times that if he did not comply, he would be placed under arrest." Dkt. 15, ¶ 6; Dkt. 15, Exhibit A. Still refused to leave the building, and McNew "gently touched his arm to

1   direct him toward the exit." Dkt. 15, ¶ 6.  Specifically, McNew placed one "hand over

2   over [Still's] elbow" and his other hand "in contract with [Still's] wrist of the same arm."

3   *Id.* Still then "voluntarily walk[ed] to the exit." *Id.* The body camera footage of this

4   incident depicts McNew briefly and gently touching Still's right wrist and elbow before

5   Still walked out of this building. Dkt. 15, Exhibit A. McNew did not arrest Still for either

6   disorderly conduct of obstructing a law enforcement officer. *See* Dkt. 15, ¶ 7.

7       Still sued the City of Longview, asserting three claims: (1) a claim seeking

8   declaratory relief that Mayor Wallis and the city council engaged in official misconduct

9   in violation of RCW 9A.80.010 (a criminal statute prohibiting public servants from

10  intentionally depriving another person of a lawful right or privilege); (2) a 42 U.S.C. §

11  1983 claim that the City of Longview, through its elected officials and police department,

12  violated Still's right under the First Amendment, applicable to the States through the

13  Fourteenth Amendment, "to speak at public meetings without being censored and

14  intimidated"; and (3) a § 1983 claim that Longview's elected officials and agents caused

15  Still emotion distress that was "proximately and directly caused by violations of

16  substantive due process provided by the Fourteenth Amendment." Dkt. 1, ¶¶ 34–43.

17      Longview moves for summary judgment on each of Still's claims.[2] Dkt. 12.

18

19

---

20  [2] Still untimely filed his opposition to this motion 24 days after the motion was filed. *See* Local Rules, W.D. Wash., LCR 7(d)(4) (stating that any opposition to a motion for summary judgment "shall be filed and received by the moving party no later than 21 days after the filing

21  date of the motion"). Under this District's local rules, the Court may consider a failure to timely respond to a motion as a concession that the motion has merit. *See* LCR 7(b)(2). However,

22  because Still's claims are plainly meritless, the Court elects to address them on the merits.

## II.   DISCUSSION

**A.    Summary Judgment Standard.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence that supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without

1    merely relying on allegations in the pleadings, that there remain genuine factual issues.

2    *Anderson*, 477 U.S. at 248.

3    **B.     Still's claim for declaratory relief under RCW 9A.80.010 is meritless.**

4            The complaint asserts that "[t]he Mayor and City Council members acquiesced in

5    a pattern or policy of threatening unlawful arrest and abuse of authority thereby

6    committing Official Misconduct, in violation of RCW 9A.80.010." Dkt. 1, ¶ 35. This is a

7    criminal statute that provides that "[a] public servant is guilty of official misconduct if,

8    with intent to obtain a benefit or to deprive another person of a lawful right or privilege,"

9    the public servant either "intentionally commits an unauthorized act under color of law"

10   or "intentionally refrains from performing a duty imposed upon him or her by law."

11   RCW 9A.80.010(1)(a)–(b).

12           Under this claim, Still seeks to enjoin Longview for engaging in "unlawful

13   attempts to intimidate Plaintiff and other members of the public seeking to exercise

14   freedom to speak in accordance with appropriate policies and instructions published by

15   the City of Longview." Dkt. 1, ¶ 35. He also seeks a declaratory judgment that

16   "Defendant's policies are illegal" and to require Longview and "its agencies" to "refrain

17   from threats and other action intended to restrict members of the public from exercising

18   First Amendment rights at City Council or other public meetings." *Id.*

19           Still fails to address how RCW 9A.80.010—a criminal statute—authorizes a

20   private right of action. "As we all know, crimes are punished by *the state* with elaborate

21   statutory provision fixing the procedure and the substantive law." *Parker v. Lowery*, 446

22   S.W.2d 593, 595 (Mo. 1969) (emphasis added). Accordingly, "a civil or remedial right of

1   action does not arise from the violation of a criminal statute unless such an intent is

2   expressed therein or clearly implied" because "such statutes are enacted for the benefit of

3   the public only." *Id.*; *accord Mezullo v. Maletz*, 118 N.E.2d 356, 359 (Mass. 1954)

4   ("[P]enal statutes have been construed as creating a new cause of action independently of

5   the common law if, and only if, that appears by the express terms or by clear implication

6   to have been the legislative intent."); *Beegle v. Thomson*, 138 F.2d 875, 880 (7th Cir.

7   1943), *cert. denied*, 322 U.S. 743 (1944) ("Statutory remedial causes of action must find

8   express basis in congressional act; they do not arise by implication from a provision for a

9   criminal penalty.").[3] RCW 9A.80.010 does not expressly create or clearly imply a private

10  right of action. Still's claim advanced pursuant to this statute fails.

11      Longview's motion for summary judgment on this claim is accordingly

12  **GRANTED** and the claim is **DISMISSED with prejudice**.

13  **C.    Still's First Amendment claim fails.**

14      The complaint asserts that "[t]he City of Longview through its elected officials

15  and police department violated Plaintiff's First Amendment right to speak at public

16  meetings without being censored or intimidated." Dkt. 1, ¶ 38. Confusingly, in the next

17  sentence and under the same cause of action, the complaint states that "[t]he specific

18  violations of Washington law include but are not limited to RCW 42 (Public Officers and

19  Agencies), Washington State Criminal Code including RCW 9A and RCW 35 (Council

20  _____

21      [3] In two unpublished opinions, the Washington Court of Appeals cited these same out-of-
    state authorities for the same proposition. *See Greenlee v. Fry's Elecs., Inc.*, No. 57860-0-I, 2007
    WL 211210, at *3 n.21 (Wash. Ct. App. Jan. 29, 2007); *Lynch v. City of Winlock*, No. 24426-8-
22  II, 2000 WL 776826, at *2 (Wash. Ct. App. June 16, 2000).

1    Meetings), and Longview Municipal Code 2.03.030 relating to City Council meetings

2    being open to the public." *Id.*

3           Longview contends that city council meetings are "limited public forums" and the

4    First Amendment authorizes reasonable restrictions on the time, place, and manner of

5    speech in such forums. Dkt. 12 at 11 (citing *White v. City of Norwalk*, 900 F.2d 1421,

6    1425 (9th Cir. 1990); *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010)). It

7    asserts that "Mayor Wallis' decision to remove Plaintiff from the two City Council

8    meetings was based upon his speaking interruption and speaking argument with her,

9    other councilmembers and City staff during the meeting—an *actual* disruption of City

10   Business—not a mere disagreement with viewpoint." Dkt. 12 at 11. Longview argues

11   that, under these circumstances, Still's First Amendment rights were not violated.

12          In response, Still does not cite any authority examining a person's First

13   Amendment rights in the context of city council meetings. *See generally* Dkt. 18. He

14   instead focuses his discussion on the Open Public Meetings Act, chapter 42.30 RCW,

15   RCW 35.18.170, Longview Municipal Code (LMC) 2.03.030,[4] and other Washington

16   statutes. *Id.* His limited discussion of the First Amendment asserts only broad platitudes

17   from federal caselaw discussing the importance of freedom of speech generally. *See id.* at

18   17–19.

19

20   _____

21          [4] Both RCW 35.18.170 and LMC 2.03.030 provide that "[a]ll meetings of the council . . .
     shall be open to the public and the rules of the council shall provide that citizens of the city or
     town shall have a reasonable opportunity to be heard at any meetings in regard to any matter

22   being considered thereat."

1    Still's attempt to support a First Amendment claim by asserting violations of state

2    statutes and a municipal code is misguided. Obviously, a violation of a state statute (and

3    certainly a municipal code) does not necessarily amount to a violation of the federal

4    constitution.

5        To the extent Still attempts to assert a claim under the Open Public Meetings Act

6    or any other state or municipal law, his claim fails. Fatally, Still's complaint does not

7    clearly assert a cause of action pursuant to any such authority. The Federal Rules of Civil

8    Procedure require a complaint to contain "a short and plain statement of the claim

9    showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "It is black letter

10   law that a party may not raise new claims for the first time in submission in opposition to

11   a summary judgment motion." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278

12   (S.D.N.Y. 2010). The only apparent mention of the Open Public Meetings Act, chapter

13   42.30 RCW, RCW 35.18.170, or LMC 2.03.030 in the complaint are under a section

14   entitled "SECOND CAUSE OF ACTION," which, in boldface, states "**42 U.S.C. §1983**"

15   and alleges that Longview violated Still's "First Amendment right to speak at public

16   meetings without being censored and intimidated." Dkt. 1, ¶¶ 37, 38.

17       It is well established that, "[t]o state a claim under § 1983, a plaintiff must allege

18   the violation of a right secured by *the Constitution and laws of the United States*, and

19   must show that the alleged deprivation was committed by a person acting under color of

20   state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Oklahoma*

21   *City v. Tuttle*, 471 U.S. 808, 817 n.4 (1985) ("[A] *federal* right . . . ha[s] to be violated to

22   establish liability under § 1983." (Emphasis added)). Because the Open Public Meetings

1    Act, RCW 35.18.170, and LMC 2.03.030 are not federal laws, they cannot underlie a §

2    1983 claim.

3           To the extent Still asserts that Longview violated the First Amendment, his claim

4    also fails. A plaintiff may establish a *Monell* claim by showing that: (1) a municipal

5    employee violated a constitutional right; (2) the municipality has customs or policies that

6    amount to deliberate indifference; and (3) those customs or policies were the "moving

7    force" behind the constitutional right violation. *Bd. of County Comm'rs v. Brown*, 520

8    U.S. 397, 403–04 (1997). A municipality may also "be held liable under § 1983 when

9    'the individual who committed the constitutional tort was an official with final policy-

10   making authority' or such an official 'ratified a subordinate's unconstitutional decision or

11   action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250

12   (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d

13   1060, 1070 (9th Cir. 2016).

14          A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436

15   U.S. at 691. A municipality may be liable for inadequate police training when "such

16   inadequate training can justifiably be said to represent municipal policy" and the resulting

17   harm is a "'highly predictable consequence of a failure to equip law enforcement officers

18   with specific tools to handle recurring situations.'" *Long v. County of Los Angeles*, 442

19   F.3d 1178, 1186 (9th Cir. 2006) (quoting *Bd. of County Comm'rs*, 520 U.S. at 409).

20          On this record, a reasonable jury could not find that Longview violated Still's First

21   Amendment rights. "[C]ity council meetings, once open to public participation, are

22   limited public forums." *Norse*, 629 F.3d at 975. "A council can regulate not only the

1    time, place, and manner of speech in a limited public forum, but also the content of

2    speech—as long as content-based regulations are viewpoint neutral and enforced that

3    way." *Id.* To this end, "limitations on speech at [city council] meetings must be

4    reasonable and viewpoint neutral, but that is all they need to be*." Kindt v. Santa Monica*

5    *Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995).

6         The Longview city council gave Still numerous opportunities to speak during the

7    meetings in dispute. He elected to do so several times, speaking extensively and

8    uninterrupted during each meeting's constituents' comments period. *See* Dkt. 13-1 at 14;

9    Dkt. 13-2 at 8–10; Dkt. 13-3 at 18–20. During two of the meetings, Still also elected to

10   speak on specific agenda items when the council allowed public comment. *See* Dkt. 13-2

11   at 46–47, 84, 99–100–102; Dkt. 13-3 at 25, 32, 58–60. Mayor Wallis and the council did

12   not, however, allow Still to speak when the constituents' comments period had ended, the

13   council was conducting its own business, and the council was not, at the time, allowing

14   public comment. Mayor Wallis and the council acted reasonably as a matter of law by

15   imposing such a limited restriction on the public so that they could discuss council

16   business in an orderly and efficient manner. Under these circumstances, no violation of

17   the First Amendment occurred.

18        Longview's motion for summary judgment on Still's First Amendment *Monell*

19   claim is **GRANTED**, and that claim is **DISMISSED with prejudice**.

20   **D.    Still's Fourteenth Amendment claim fails.**

21        The complaint finally asserts that Longview's "elected officials and agents, acting

22   under color of law, prevented Plaintiff from speaking on subject matter that had been

1  raised by constituents in previous meetings," which violated Still's right to "substantive

2  due proves provided by the Fourteenth Amendment to the U.S. Constitution." Dkt. 1, ¶

3  42.

4        Longview interprets this as a claim alleging that, during the June 2023 meeting,

5  Captain McNew used excessive force in violation of the Fourth Amendment when he

6  "t[ook] hold of Mr. Still's right arm and escort[ed] [him] our of the Longview City Hall

7  building." Dkt. 12 at 11. Longview asserts that, under the circumstances, McNew "had

8  probable cause to arrest [Still] for disorderly conduct and obstructing a law enforcement

9  officer" and, instead of exercising his discretion to arrest Still, McNew instead "gently

10 touched his arm to direct him toward the exit." *Id.* Longview contends that this does not

11 amount to a Fourth Amendment violation. *Id.*

12       Still appears to agree that this claim is more appropriately analyzed under the

13 Fourth Amendment.[5] *See* Dkt. 18 at 16–17. However, he does not cite any caselaw

14 demonstrating how, exactly, Captain McNew's conduct violated the Fourth Amendment.

15 *See id.* Still instead asserts, without citing authority, that "Captain McNew employed

16 unlawful and unreasonable physical force against Plaintiff; by taking hold of his right

17 arm and escorting Plaintiff out of the Longview City Hall building unlawfully," that

18 "Plaintiff was threatened with arrest, incarceration, and physical force," and that "[e]ach

19

20 _____

   [5] The Court agrees. The Supreme Court has made clear that "*all* claims that law
21 enforcement officers have used excessive force—deadly or not—in the course of an arrest,
   investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth
   Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'
22 approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

1    of the threats made by law enforcement were made without reasonable suspicion or

2    probable cause." Dkt. 18 at 7, 17.

3         "Excessive force claims are founded on the Fourth Amendment right to be free

4    from unreasonable seizures of the person." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d

5    1110, 1115 (9th Cir. 2017) (citing U.S. CONST. amend. IV; *Graham v. Connor*, 490 U.S.

6    386, 394–95 (1989)). "The Fourth Amendment is implicated where an officer exceeds the

7    bounds of reasonable force in effecting an 'an arrest, investigatory stop, or other

8    seizure.'" *Shafer*, 868 F.3d at 1115–16 (quoting *Graham*, 490 U.S. at 395–96). Courts

9    "analyze excessive force claims according to the constitutional touchstone of objective

10   reasonableness, so [they] do not consider an officer's subjective 'intent or motivation.'"

11   *Shafer*, 868 F.3d at 1116 (quoting *Graham*, 490 U.S. at 397). "This determination

12   requires [courts] to balance the 'nature and quality of the intrusion on the individual's

13   Fourth Amendment interests against the countervailing governmental interests at stake.'"

14   *Shafer*, 868 F.3d at 1116 (*Graham*, 490 U.S. at 396). Courts consider "the facts and

15   circumstances of each particular case, including the severity of the crime at issue,

16   whether the suspect poses an immediate threat to the safety of the officers or others, and

17   whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 397.

18        Under the circumstances of this case, McNew reasonably believed that he had

19   probable cause to arrest Still for both disorderly conduct and obstructing a law

20   enforcement officer. "A person is guilty of disorderly conduct if the person . . .

21   [i]ntentionally disrupts any lawful assembly or meeting of persons without lawful

22   authority." RCW 9A.84.030(1)(b). Furthermore, "[a] person is guilty of obstructing a law

1    enforcement officer if the person willfully hinders, delays, or obstructs any law

2    enforcement officer in the discharge of his or her official powers or duties." RCW

3    9A.76.020(1). After Still disrupted the June 2023 city hall meeting, McNew approached

4    Still and Still, who was cooperative at first, walked directly outside of the city hall

5    chambers. Dkt. 15, ¶ 5. Thereafter, however, Still "stood in the hallway where he could

6    still be seen and heard by those inside the City Hall Council Chamber." *Id.* McNew's

7    body camera footage of this event depicts Still standing in direct view of the city council

8    members as they deliberated, separated by a clear glass wall and two open doors. Dkt. 15,

9    Exhibit A.

10          McNew asked Still several times to leave the building, but Still refused. Dkt. 15, ¶

11    6; Dkt. 15, Exhibit A. McNew then ordered Still to leave the building, and Still again

12    refused. Dkt. 15, ¶ 6; Dkt. 15, Exhibit A. At this point, an officer at the scene would have

13    reasonably believed that Still had committed the crimes of disorderly conduct and

14    obstructing a law enforcement officer. McNew reasonably exercised his discretion to *not*

15    arrest Still and to, instead, "gently touch[] his arm to direct him toward the exit." Dkt. 15,

16    ¶ 6; *see also* Dkt. 15, Exhibit A. No Fourth Amendment violation occurred. Therefore,

17    this *Monell* claim fails as well.

18          Longview's motion for summary judgment on this claim is **GRANTED** and the

19    claim is **DISMISSED with prejudice**.

20                              **III.  ORDER**

21          Therefore, it is hereby **ORDERED** that Longview's motion for summary

22    judgment, Dkt. 12, is **GRANTED**. All of Still's claims are **DISMISSED with prejudice**.

1    The Clerk shall enter a **JUDGMENT** and close the case.

2    Dated this 2nd day of August, 2024.

3

4    _____

5    BENJAMIN H. SETTLE
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22